September 17, 2013 Lisa Cruz v. Kirstjen Nielsen prepares to welcome President Trump to Washington, D.C. We'll wait just a second while the folks who want to leave make their way out quietly. Ms. Miller, please proceed. Your Honors, the District Court grossly abused its discretion by denying Ms. Cruz basic discovery in her Title VII claims at the outset of this case. There were five types of documentary evidence that she sought from discovery, most importantly relating to comparators. As you all know in Title VII claims, you've ruled before recently as recently as the Georgetown University Hospital case, the Wheeler v. Georgetown University Hospital case in 2016, that, you know, comparator evidence is a way. Remind me, how did she describe the comparators that she wanted to take discovery from? How did she describe them? Because I believe the District Court thought she didn't give a sufficient description. Would you discuss that? Yes, Your Honor. Our client, unlike the Wheeler case, did not identify specific people that were comparators. But in this particular case, she described the comparative evidence that she wanted, which were the demographics of the Mount Weather and the headquarters staff at the Office of the Chief Information Officer, disciplinary actions, information about reassignments, demotions, administrative inquiries, how they were conducted differently for her versus other people, evidence about working relationships between Ms. Cruz, her peers, and subordinates, as well as comparative evidence could potentially establish deviations in how the agency conducted administrative inquiries. So she did not identify specific people. She did not know specific managers who had been treated differently. But in fact, based on her own experience, she knew that she'd been treated differently and was certainly entitled to discovery. I'm sorry. Can you explain that? She didn't know the identity of other people who had been treated differently, but she knew on the basis of her own experience, people similarly situated had been treated. I can't put those two propositions together. Yes. Your Honor, our client was unaware of any manager who was removed after allegations of rude behavior. In fact, she doesn't believe that there were any. You have to have the rude behavior of the same quality and persistence and numbers. Yes. So she didn't know of any specific managers. But by discovering, by conducting discovery, what we hope to establish was either there were some others. Look at the demographics, the race and the gender of these folks. If there are others, if there were no others, then that would be instructive as well. She didn't know of any such people. And then the question is, did she have any reason to believe that they existed? People identically situated with respect to conduct, differently situated with respect to ethnicity, etc., who are treated differently. I didn't see anything pointing to reason to believe that such people existed. That's true. However, the discovery that she would take would not only demonstrate the demographics of the workforce, but also help, in fact, to prove just her point, which is she was one of the only female minority managers operating as a manager in the Office of the Chief of Information Officer. Because she was really one of a kind, she believed that she was being treated differently and removed precipitously from her position based on just comments or alleged rude behavior. So no, she wasn't aware of any, but we believe that the evidence of the demographics, as well as any, the fact that there were others, that could certainly be probative. Complainants, that's a purpose of discovery. Given her own experience, she knew that there was no one else, at least in her experience, had been so quickly removed based on mere rude behavior. In fact, she'd observed rude behavior by many white males that worked in that office for years. So, but that's just one aspect of the evidence that she was seeking, Your Honors. Highly relevant evidence, also in this case, included witness evidence. And what's really shocking is the district court ignored, just completely ignored the written documentary evidence of witnesses that she sought to depose. And those included witnesses who, witnesses who were directly privy to offensive racially and gender charged comments, such as women cannot make rational decisions because of their hormones. That she, this was an old boy's club, the Office of the Chief Information Officer. And that there were two things holding her back, that she was a black and female. So, you know, this was not a case where there was no evidence of direct offensive racially and gender based comments that would certainly support the discovery that was sought in this case. And that's why the judge abused his discretion. He simply, not only did he ignore that evidence, which the judge, which the agency doesn't even quibble with, but just denied her the opportunity to prove pretext. And that's not going to happen in any Title VII case without the potential of their being compared to her evidence, which she wasn't even able to obtain, or much less take depositions of witness that she could not because of the absence of subpoena authority in the EEOC, depose, who are no longer agency employees. So there's just no, there was no fish in the expedition here. And in fact, the judge denied discovery in this case based on a misapprehension of the record. That's another indication for you all that he abused his discretion. He, if you read it, his decision was simply that any discovery would be futile because the government's case was unassailable. Well, first of all, not only the direct witness statements that contradict that, but the judge appears to rely, in fact, relies exclusively on an administrative inquiry that was conducted by a human resources person who the judge said didn't know Ms. Kuz's race and national origin and gender, or probably knew her gender because she had a female first name. But the reality is, is that human resources official was not the decision maker. That human resources official, Ms. Gunseless, was instructed to conduct the administrative investigation by the managers that my client alleged discriminated against her. The only people that Ms. Gunseless interviewed were people that the manager, the alleged responsible management official, told her to do. The discovery that you sought, was that related solely to the discrimination claim, or was the discovery sought in opposition to summary judgment on the retaliation claim as well? The discovery that was denied related to just the discrimination claim, because the witnesses that we sought to depose and the comparative evidence related directly to the retaliation claim. And so, what about the government's argument with respect to affirming the summary judgment on the retaliation claim? Your Honor, the, with respect to the retaliation claim, the district court just missed the mark, okay? He missed the mark because he found, and the agency doesn't even have a just pretext in his retaliation analysis. He simply said that Ms. Cruz failed to establish a prima facie case by lacking this causal connection. The agency itself doesn't even try to defend that decision. The retaliation claim into its separate parts seemed quite different. I mean, there's certainly a difference between being sent to a department that didn't use her and being demoted within her own, what she'd always been doing. Yes, Your Honor. And hence, the judge's error. There was clearly a prima facie case established. What the judge misconstrued the record about is that it was after her protective EEO activity that she alleges that her detail was extended by four months. In addition, that she was reassigned from a position to a position she was completely unfamiliar with. Yes, but the principle underlined that the detailing her out of her prior position was clearly established before any retaliatory, any action-inviting retaliation occurred, right? Yes, Your Honor. However, the record shows that prior to her EEO complaint, her protective activity, the plan, the manager's plan was to bring her back to the position of deputy, which would have continued to, you know, allow her to work as a chief information security officer career field. And it was only after her protected activity that she was just moved out of the CISO chief information security. You're mixing the two things. One is the extension of four months of not being in this section, and the other is being removed from the section altogether, right? And maybe this section, I'm sure, is not the technically correct word, but the difference between using her expertise and not using her expertise. And on the second, that stands on a different footing from the first. Yes, Your Honor. But there was a prima facie case here, and the judge failed to get at pretext. He failed to examine the evidence of pretext that existed. He didn't even touch pretext, which was an error. But in terms of the prima facie case and the causal connection, there was only a two-week period of time from the protected activity until the change of plans for our clients. So not only, you know, from her perspective, she expected to come back in 90 days, right? So the judge, you know, I think misapprehends the record when he says that there was a course that was set into motion that was unaltered by the EEO activity. It's simply not true. If you actually examine the record, totally different things happened to her after EEO activity within a short period of time afterwards, which helps to establish the temporal proximity that establishes a prima facie case. The error here is the judge ignored pretext and failed to conduct that analysis, which he needed to have done. We'll give you two minutes back on our panel. Thank you very much. May it please the Court. My name is Joshua Rogers, and I represent the United States. I'd like to begin by addressing this issue of these two different phases of response to the appellant's behavior. So there is this inappropriate behavior that they're responding to, or what they believe to be inappropriate behavior. The first action that's taken is to transition her to a deputy position. The reasons that they have are, I don't have to belabor this, are things like shouting, calling people liars, demeaning people, and making a sexually inappropriate comment, okay? So after that, what we have is the June change, in which she's transitioned into another position. With respect to that, there are reasons given for that. First of all is, we don't want interference with the new chief. Everyone in the department is showing signs of being more stable, more focused, there's better morale now. They state, Ms. Rhodes states, that there was a hostile environment before. In the meantime, you need to learn how to talk to the new chief. You need to learn how to talk and get training. And she also states that this ordinance is very afraid of you, which really brings in... But here's my question about all of that, counsel. Those are all, you know, plausible reasons, but why isn't that something for a case to go to the jury? I mean, why is that the only conclusion that a jury could find? Especially since she was transitioned ultimately to a new position where she was supervising people. Well, if she was a problem supervisor, and that's the reason that you're moving her, then why don't you move her to another position supervising people? Well, as I mentioned before, there is that second set of justifications. But at the same time, as we note in our brief, the court found that there was no issue with Ms. Rhodes. There was no issue of disputed material facts. And explains that there were, in fact, these facts that have been laid out in the defendant's statement of material facts, which had gone uncontested. In this particular, that particular case and before this court, we also have the plaintiff not actually contesting what the United States has alleged with regard to three different types of behavior. At no point anywhere, either in the record below or in her briefs, did she ever argue that she did not make, or she doesn't actually do it on a convincing basis, that she didn't make a sexually inappropriate comment in response to an employee who wouldn't lie. And that she also did not retaliate against this employee. That is not challenged other than erroneously. What's also not challenged is that the initial plan with respect to her was that she would be made the deputy chief, branch chief, or whatever the proper term is. And then after she filed her EEO complaint, the plan changed. That's not contested by you, right? We would agree that the plan did change. So the question for us is, especially since the plan changed very quickly after that happened, during a time period where we said that in the light most favorable to the plaintiff, we can infer discrimination, right? That's what our case law says, right? Well, I wouldn't agree, because basically what she has to show is that the agency did not believe this was true. When she hasn't contested these facts, then what we have to conclude is that the agency did, and she has done nothing to show that the real reason was discrimination. You would concede that the presumption of discrimination applies with this short time period, right? The three-month time period? Yes, under our case law. The problem is that fundamentally under Brady, she just simply hasn't even made a dent in the presumption in this case, because there's nothing contested that the agency had a basis for what it did. And that is that whole slew of reasons. It's just she doesn't even contest it. When I was on the district court, I tried lots of employment cases. And the jury instruction that I used, which came from case law in the Third Circuit and our circuit, gave an example. And the example was that if a party is discharged because they stole pencils, they took pencils from the office supplies and they took them home, and that was in violation of the policy about not making personal use of office supplies. That could be a permissible basis for discipline or terminating them. But what if, you know, that was a woman and all the men took pencils home, and the employer knew that, but didn't terminate them? You can have a reason to believe that the person violated the policy, but still have a case to go to the jury. And I don't know about whether or not that was the real reason. That was, you know, the classic example in this jury instruction. Was I giving a bad jury instruction back then? I don't believe so. In this case, she stole the whole store of pencils, and there's no evidence any male did. Well, you didn't give her a chance to look for it, for one. In discovery? Yeah. I would disagree with that. Well, what chance did she get? You filed an answer in the motion for summary judgment five minutes later. So what chance did she get to have any discovery here? Well, that's her argument, that I'm just bereft of any chance whatsoever, which is difficult to swallow in light of the fact that there were the records of an informal investigation, 37 sworn witnesses. So someone who undergoes an administrative process doesn't have the right to take civil discovery under the federal rules? I wouldn't agree with that. Do we have a different set of standards for when they can get discovery than somebody who doesn't go through the administrative process? Absolutely not. And why are you arguing that she should be penalized or have to show some higher standard because there were some records that were available to her from the administrative process? I'm not making an argument about the administrative process. I'm making an argument about the motion for summary judgment standard. There were 500 pages of records that the United States placed on the record for its motion for summary judgment, regardless of where it came from. And the plaintiff included 75 pages of her own record. So the court says, I have all of this. And on the issue here, what we have is, did the court make an abuse of it, have an abuse of it? Okay, so let's go back to my jury instruction question. Suppose then the district court would be entitled to say, she stole pencils. The records that the government provided in their statement of facts shows that she stole pencils and they believe she stole pencils. What the records don't show is whether other people stole pencils and weren't disciplined, right? None of the records get to that. She doesn't get a chance to have discovery to try to establish that? The problem is, in her 56D affidavit, she says nothing about pencils. Instead, she simply says, I want information with respect to demographics, culture, standard policies. She says she wants information about whether other people were disciplined for similar reasons. She says that, doesn't she? Would you grant me that? Those other people include pretty much every protected category. Well, I mean, that's why you have limits on discovery. Maybe the 56D affidavit was too broad, but does that mean that the court has to, the way that they're supposed to exercise their discretion is to say, you asked for too much discovery, so you get none? Well, the answer to that would be that the court is, there's an abuse of discretion standard here, and essentially what she's saying to the court is, I'm not going to tell you what exactly it is what I'm looking for, so why don't you do the deep dive into the record, and then tell me exactly what I can find that might be helpful. Instead, she says, tell me everything with regard to all relevant times, all these different categories. There is nothing that narrows this down to who's stealing pencils. If there are no further questions, I'll take my seat. Your Honors, I think it's telling that the government defends this appeal based on arguments that it never even raised in its motion for summary judgment, or that the court raised or based its decision on in granting summary judgment. Not anywhere was the adequacy or the inadequacy alleged of the Rule 56 affidavit a basis for this Court's decision. Not only was the plaintiff specific in the examples of the documented evidence of comparators that she had, that she was seeking, she also satisfied all the other necessary elements for a Rule 56 affidavit. The government filed this motion for summary judgment. She opposed it. Not even in its reply brief did they say that the Rule 56 affidavit was incomplete or inaccurate. So the problem... But the local rule, Local Rule 7H, I believe it is, they filed a statement pursuant to that local rule, and your client did not file a response to that statement rebutting any of those facts, right? Well, in its argument, our client argued that it needed additional discovery, additional evidence, additional evidence, additional evidence, including witness depositions that were unable to be taken before, to be able to effectively address some of these, you know, allegations that she was such a bad manager, she didn't even deserve to be in this job. You know, so it's absolutely not true that our client conceded that she wasn't the victim of discrimination. If you simply look at our briefs and our pleadings, she... The essence and the gravamen of her case, that the witnesses that she was denied having would have direct evidence. The witnesses that she was denied the opportunity to pose would provide direct evidence supporting her claims of race and gender bias. The government suggests that this HR representative, you know, relied heavily on some allegations that our client committed gender discrimination against another employee. If you look at the testimony of the HR specialist, she herself says that didn't matter to her. That wasn't even part of her investigation. So the government is reinventing this record, making new arguments that it never made before, all of which don't get to the fundamental point here, which is that judge, in a hasty rush to judgment, closed the doors to justice on Ms. Cruz. There was direct evidence of gender and race bias here, from witnesses who worked with these same managers who criticized or complained about her being rash. This is just not the case. We're denying discovery. Are you saying that if we look at the portions of the administrative record we have for us, not all of them, we will find that you had no opportunity to inquire into comparators? Your Honor, the only comparator evidence that was offered was offered by client. And the government didn't even offer comparator evidence because it wasn't produced. And her effort to exhaust administrative remedies and her effort to seek discovery in the EEOC process doesn't preclude her ability in a de novo review under Title VII to prove her claims. So... Your Honor, the government relies to some extent on the view that she had various opportunities in the administrative process. And stated in this general proposition, that seems clearly true. The question, at least a question, is the extent to which she sought information on the question of comparators and was thwarted, or if there was something about the process which made it hopeless to even seek information. Well, she certainly, in this record, is very lengthy, as you might imagine. And the government didn't even bring forward any evidence or argument that the discovery taken below was inadequate. We didn't have the evidence, Your Honor. The government refused to produce comparator evidence. The government never even produced evidence about the racial composition, as it should have, of the staff and the chief information officer, which, by the way, there are about 800 people working there and multiple scores of managers. And you sought information and were thwarted? Yes, Your Honor. We took discovery in the EEOC process and we did not obtain information about the actual demographics. But that was only one aspect of the information we sought. And that includes information about, you know, similarly situated employees that were disciplined. So what I would urge you to consider here is that she was denied the opportunity to pursue a de novo claim that she's entitled under Title VII to pursue. Thank you very much.
judges: Griffith, Wilkins, Williams